| | | |
|---|---|---|
| 1 | Victor L. George, State Bar No. 110504 | Robert M. Bowick, Jr. |
| 2 | Wayne C. Smith, State Bar No. 112535 | RALEY & BOWICK, LLP |
|   | LAW OFFICES OF VICTOR L. GEORGE | 1800 Augusta Drive, STE 300 |
| 3 | 20355 Hawthorne Blvd., First Floor | Houston, Texas 77057 |
| 4 | Torrance, CA 90503 | Tel: (713) 429-8050 |
|   | Tel: (310) 698-0990 | Fax: (713) 429-8045 |
| 5 | Fax: (310) 698-0995 | E-mail: rbowick@raleybowick.com |
| 6 | E-mail: vgeorge@vgeorgelaw.com | |
|   | wsmith@vgeorgelaw.com | |
| 7 | | |
| 8 | Keith D. Nowak | |
|   | Carter Ledyard & Milburn LLP | |
| 9 | 2 Wall Street | |
| 10 | New York, NY 10005 | |
|    | Tel: (212) 732-3200 | |
| 11 | Fax: (212) 732-3232 | |
| 12 | E-mail: nowak@clm.com | |

13  Attorneys for Plaintiff
14  KANEKA CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 17 | KANEKA CORPORATION, a Japanese Corporation, | Case No. CV-11-02389-MRP-SS |
| 18 | | **JOINT RULE 26(f) REPORT** |
| 19 | Plaintiff, | |
| 20 | v. | |
| 21 | ZHEJIANG MEDICINE CO., LTD., a Chinese Corporation, ZMC-USA, L.L.C., a Texas Corporation, XIAMEN KINGDOMWAY GROUP COMPANY, a Chinese Corporation, PACIFIC RAINBOW INTERNATIONAL INC., a California Corporation, MITSUBISHI GAS CHEMICAL COMPANY, INC., a Japanese Corporation, MAYPRO INDUSTRIES, INC., a New York Corporation, and SHENZHOU BIOLOGY & TECHNOLOGY CO., LTD., a Chinese Corporation, | Date: May 7, 2013<br>Time: 1:30 pm<br>CTM: 12 |
| 22 | | |
| 23 | | |
| 24 | | Judge: Hon. Mariana R. Pfaelzer |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | Defendants. | |

**JOINT RULE 26(f) REPORT**

Pursuant to Federal Rule of Civil Procedure 26(f) and Central District of California Local Rule 26-1, counsel for all parties other than Mitsubishi Gas Chemical Co., Ltd. ("MGC") met and conferred on April 28, 2013, and again on May 3, 2013, and hereby submit this Joint Report. As stated in more detail below and in their "Notice of Settlement," plaintiff Kaneka Corporation ("Kaneka") and defendant MGC are settling this case, and MGC will no longer participate in this case. As a result, the term "parties" in the remainder of this Report refers to the parties other than MGC.

The parties also submit a proposed Scheduling Order that is being filed contemporaneously with this Joint Report.

The parties have also discussed a proposed stipulation whereby the discovery obtained during the ITC Proceeding could be used as if it had been discovered in this case.

## I. Introduction and General Statement of the Case

This is a patent infringement action in which Kaneka Corporation ("Kaneka") alleges that the defendants Xiamen Kingdomway Group Company ("XKGC"), Pacific Rainbow International Inc. ("PRI"), Mitsubishi Gas Chemical Company, Inc. ("MGC"), Maypro Industries, Inc. ("Maypro"), and Shenzhou Biology & Technology Co., Ltd. ("Shenzhou") (collectively "Defendants"), infringe Kaneka's U.S. Patent No. 7,910,340 ("'340 patent"). Another Chinese company, Zhejiang Medicine Co. Ltd., and its U.S. distributor, ZMC-USA LLC, (collectively "ZMC"), were initially named as defendants in this action. The case against ZMC was transferred from this Court to the United States District Court for the Southern District of Texas on June 10, 2011. *See* Civil Action No. 54:11-cv-1052. Kaneka is proceeding against ZMC in the Southern District of Texas ("Texas case") pursuant to that Court's Supplemental Scheduling Order of January 25, 2013. Trial of that case is currently set for June 14, 2014. A *Markman* hearing has been completed in the Texas case and discovery is ongoing. Kaneka does not intend to transfer or consolidate this case with the Texas case.

The '340 patent is directed to a process for producing oxidized coenzyme Q10 ("CoQ10"), a dietary supplement. Kaneka, a Japanese corporation, produces oxidized CoQ10 at its plant in Osaka, Japan, and at its plant in Houston, Texas. Defendants XKGC and Shenzhou produce oxidized CoQ10 at their respective plants in China and distribute the product in the U.S. through their respective U.S. distributors, PRI and Maypro.

Kaneka has been advised that defendant Maypro Industries Inc. is not the proper defendant in this case. Kaneka will file a Motion to Amend the current Complaint to name Maypro Industries LLC as a party defendant, instead of Maypro Industries Inc. The Motion will not be opposed by Maypro.

Kaneka and MGC have agreed to settle this matter as MGC is no longer manufacturing oxidized CoQ10. Settlement documents have been exchanged and it is believed that the settlement documents will be executed in the next 30 to 60 days. The delay is based on the need to have the settlement documents approved and executed in Japan.

Kaneka has been further advised that the only allegations in its Complaint relating to Maypro concern oxidized CoQ10 manufactured by MGC, and the settlement between Kaneka and MGC would resolve all pending claims of infringement against Maypro. Upon execution of the settlement between Kaneka and MGC, Maypro will seek to be dismissed as a party to this case.

The '340 patent was previously asserted against all Defendants and ZMC in the International Trade Commission, ITC Investigation No. 337-TA-790 ("ITC Proceeding"). A final decision was rendered in the ITC Proceeding on December 6, 2012 in which the ITC affirmed the decision by Administrative Law Judge ("ALJ") Robert K. Rogers, Jr., finding that no valid and enforceable claim of the '340 patent had been infringed by the Defendants and ZMC.

ALJ Rogers determined that Shenzhou's and XKGC's respective processes did not infringe the '340 patent. ALJ Rogers's following statement with respect to

Shenzhou's non-infringement also applies to XKGC and of course the U.S. distributors of both companies:

> Kaneka has failed to prove by a preponderance of the evidence that Shenzhou's process of producing coenzyme Q10 infringes any asserted claim of the '340 Patent. Although there are other minor disputes between the parties, the key disputes between Kaneka and Shenzhou are whether or not Shenzhou's process meets the 70 mole % limitation (as required by all asserted independent claims), whether or not Shenzhou's process meets the limitations requiring extraction of coenzyme Q10 under an **inert gas atmosphere** as required by asserted independent claims L and K and whether or not Shenzhou's process meets the limitations requiring extraction of coenzyme Q10 in a **sealed tank** as required by asserted independent claims 22 and 33. I find that Kaneka has failed to carry its burden of proof on all of these issues. (emphasis added).

ALJ Rogers concluded that Kaneka failed to show Shenzhou's and XKGC's processes satisfied the 70 mole % limitation (as required by all asserted independent claims) based on his finding that the tests Kaneka performed on Shenzhou's and XKGC's processes were not reliable. The testing procedures used during the ITC investigation show that the different parties, different laboratories, and different thawing of samples produced scattered and inconsistent mole % ratios for the same batch samples. Kaneka disagrees with ALJ Rogers's finding and is prepared to demonstrate before this Court a reliable and accurate testing procedure to show that Shenzhou and XKGC meet this limitation. ALJ Rogers's non-infringement findings with respect to "inert gas atmosphere" and "sealed tank" were based on his determination that Shenzhou's and XKGC's processes did not meet his claim constructions of these terms.

Some of ALJ Rogers's claim constructions are different from the claim constructions reached by the Honorable Vanessa D. Gilmore in the ongoing Texas case against ZMC. Kaneka disagrees with ALJ Rogers's claim constructions and believes this Court will determine claim constructions more in line with the definitions reached by Judge Gilmore. Kaneka did not appeal any aspect of the Initial Determination

issued by ALJ Rogers, including his findings with respect to the construction of any disputed claim term.

Defendants are not parties in the Texas case, and they have not been involved in any claim construction related issues in the Texas Case. Further, Shenzhou, XKGC, PRI, and Maypro disagree with Kaneka that this Court will determine claim constructions more in line with the constructions reached by Judge Gilmore.

This Court is not bound by the ITC's findings or claim constructions, but such findings and constructions are persuasive authority for this Court to consider when issuing its own findings and claim constructions. *Texas Instruments Inc. v. Cypress Semiconductors Corp.*, 90F.3d 1558, 1568 (Fed. Cir. 1976). Kaneka believes it will establish infringement in this proceeding, while Shenzhou, XKGC, PRI, and Maypro believe this Court will hold that Shenzhou's and XKGC's respective processes do not infringe any valid and enforceable claim of the '340 patent.

Pursuant to federal statute and regulations,[1] the parties cannot use confidential business information obtained during the ITC Proceeding in this case unless the supplier of that confidential business information consents to the use of such information. Accordingly, the parties have discussed a proposed stipulation whereby the discovery obtained during the ITC Proceeding could be used as if it had been discovered in this case. To prevent a duplication of every facet of discovery already taken in the ITC Proceeding, Kaneka and ZMC have reached such a stipulation in the Texas case. *See* Civil Action No. 54:11-cv-1052, Doc. No. 102.

Based upon the inconsistent testing procedures recognized by the ITC, the parties in the Texas case further stipulated:

> "The Parties further stipulate that the fact that a deponent was previously deposed or otherwise examined during the ITC proceeding does not preclude the same witness' deposition in the underlying case, including covering topics discussed during the ITC depositions and hearings, and that re-testing of Kaneka's and ZMC's processes and products is also not precluded based upon the ITC's criticisms of the testing procedures".

---

[1] *See* 19 U.S.C. §1337(n), 19 C.F.R. §§210.5 & 210.34.

1  Similar to its position in the Texas case, it is Kaneka's position that it is necessary for
2  Kaneka to re-test Shenzhou's and XKGC's processes and products and re-depose
3  certain fact witnesses.
4      It is Shenzhou's, XKGC's, PRI's, and Maypro's position that such re-testing
5  would be futile and not necessary in this case. Further, Shenzhou, XKGC, PRI, and
6  Maypro reserve their rights to challenge any attempt by Kaneka to conduct discovery
7  beyond that authorized by the Federal Rules of Civil Procedure or in violation of any
8  laws of the People's Republic of China.

**II.    L.R. 26-l(a) - Complexity of the Case and Primary Claims and Defenses**

The parties believe that this case is a standard patent infringement case and there is no need to utilize the Manual for Complex Litigation. It is Kaneka's position that some discovery must be taken in China and Japan and the need for document translation will require additional time for discovery as addressed below. Shenzhou, XKGC, PRI, and Maypro do not believe any further discovery must be taken in China and Japan.

**III.   L.R. 26-1(b) - Motion Schedule**

Kaneka, at this time, does not anticipate filing dispositive or partially dispositive motions. However both Shenzhou and XKGC have advised Kaneka that they intend to file Amended and Supplemental Answers with Counterclaims. Kaneka has agreed not to object to such filings but will respond to each Amended and Supplemental Answer and each Counterclaim.

Shenzhou, XKGC, PRI, and Maypro intend to file dispositive or partially dispositive motions in this case, but the nature and timing of these planned motions will be the subject of further discussion between the parties.

**IV.    L.R. 26-l(c) - ADR Procedures**

The parties are willing to mediate this dispute. The parties propose that a private mediator with experience in patent litigation mediate this dispute.

## V. L.R. 26-l(d) - Trial Estimate

Kaneka estimates five trial days for Kaneka to present its evidence on issues for which it has the burden of proof. Shenzhou, XKGC, PRI, and Maypro estimate having a cumulative five to nine trial days for them to present evidence on issues for which they have the burden of proof. The total estimated time for trial is ten to fourteen days.

## VI. L.R. 26-1(e) - Likelihood of Appearance of Additional Parties

Kaneka does not intend to bring in additional parties. Shenzhou, XKGC, PRI, and Maypro intend to call certain third parties at trial in order to present evidence in support of the issues before this Court; they do not intend to add any additional parties to this case.

## VII. L.R. 26-l(f) - Proposed Timing of Expert Witnesses

The parties believe that expert witness disclosures and discovery should be in accordance with Federal Rule of Civil Procedure 26(a)(2)(D)(i).

## VIII. Rule 26(f) Topics

### A. Timing of Initial Disclosures

The parties will exchange their initial disclosures as required by Rule 26(a) once the stay in this case is lifted. The parties have agreed to supplement these disclosures as additional information becomes available.

### B. Subjects of Discovery

The parties believe that discovery will be needed on the following topics:

(1) The manufacturing process utilized by the parties, before and after December 27, 2001, to manufacture their CoQ10 products, including but not limited to details of the equipment used for extraction and the conditions under which extraction was performed, the microorganisms used in the processes, testing or other documents related to the amount of reduced CoQ10 compared to total CoQ10 at any stage in the processes, and the dates each manufacturing process was used to make oxidized CoQ10 that was sold in the U.S.;

(2) The parties' research and development work on their CoQ10 products;

(3) Any patent applications or patents filed by the parties relating to CoQ10;

(4) Documents and/or information identifying each of the parties' CoQ10 products by product name, product code, and any other internal or external designations;

(5) Documents and/or information identifying each product known to incorporate the parties' CoQ10 by product name, product code, and any other internal or external designations;

(6) Documents and/or information in support of the parties' allegations, including allegations made in pleadings and during discovery, *e.g.*, complaint, countercomplaint, interrogatory responses;

(7) The parties' document retention policies;

(8) The parties' organizational charts;

(9) The parties' assignments, licensing, and other agreements relating to their CoQ10 products, and the parties' offers to assign or license;

(10) The parties' communications with its customers regarding the '340 Patent and the current litigation;

(11) Communications regarding Kaneka's infringement allegations, the '340 patent, and/or this case to customers or potential customers of Shenzhou, XKGC, PRI, Maypro, and/or other members of the trade;

(12) All U.S. customers that have ordered, purchased, and/or been delivered the parties' CoQ10 products;

(13) Invalidity, unenforceability, and non-infringement of any asserted claim of the '340 Patent;

(14) All prior art, state of the art, and other documents in support of invalidity, unenforceability, and non-infringement claims, including but not limited to any prior art identified during the prosecution of any U.S. or foreign

7
**JOINT RULE 26(f) REPORT**

     patents or patent applications relating to the '340 patent and any prior art identified by any licensees or potential licensees;

(15) Conception and reduction to practice of the invention(s) purportedly described in the '340 patent and other patents, if any, that Kaneka will assert;

(16) Prosecution of the application for the '340 patent and any related U.S. and foreign patents or patent applications;

(17) Damages caused to Kaneka by Shenzhou's, XKGC's, PRI's, and/or Maypro's conduct, and vice versa; and

(18) All financial information relating to the parties' CoQ10 products, including orders, sales, revenues, and profits.

  Much of this discovery (except for the discovery on damages) has already occurred during the ITC Proceeding. If the parties reach an agreement on the use of such discovery the amount of additional discovery would be substantially diminished.

  **C. Date by Which Discovery Should Be Completed**

  Assuming that the parties agree that all discovery obtained in the ITC Proceeding may be utilized in this case, the parties believe discovery should be completed by January 6, 2015, as set out in the proposed Scheduling Order.

  **D. Whether Discovery Should Be Conducted In Phases**

  The parties do not believe there should be any phased discovery and that discovery should be conducted as in a typical patent infringement case.

  **E. Issues Surrounding Electronically Stored Information**

  The parties have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The parties agree as follows: The parties shall not be required to produce electronically stored

information that is not reasonably accessible, including from discontinued or archived systems. In motion practice, the burden shall be on the party seeking discovery of such information to show that the information is not obtainable from some other source that is more convenient, less burdensome, or less expensive. The parties agree that all searches of electronically stored information will be limited and that metadata will be produced only if the opposing party can show good cause as to why the production of such metadata is necessary. The parties have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. If privileged information, whether electronically stored or in paper form, is inadvertently produced, the producing party may, by timely written notice, assert the privilege or protection and obtain return of the materials without waiver. The parties further agree that they will execute and present to the Court a mutually satisfactory confidentiality agreement and protective order, a copy of which will be filed with the Court.

**F.    Issues Surrounding Privilege or Trial Preparation Materials**

The parties are not presently aware of issues surrounding trial preparation materials. The parties will submit a joint stipulation to the Court addressing these issues if they arise.

**G.    Changes to Discovery Limitations**

The parties agree that the limitations on discovery imposed by the Federal Rules of Civil Procedure and the local rules of this District are sufficient. The parties intend to agree that all discovery in the ITC Proceeding can be used in this case to reduce the expense to all parties, and that discovery from the ITC Proceeding will not count against the limitations on discovery imposed by the Federal Rules of Civil Procedure and the local rules of this District.

### H. Special Issues Raised in the Court's Rule 26(f) Instructions

#### 1. Parties' Position

##### (i) The Scope and Timing of Claim Construction Discovery.

The parties have proposed a schedule which requires disclosure of the parties' respective infringement/non-infringement claims, proposed interpretations of claim terms, and extrinsic evidence relied upon. Based upon these agreed upon disclosures, the parties do not believe any additional written discovery is necessary for the purposes of *Markman*.

At this time, Shenzhou, XKGC, PRI, and Maypro may rely upon expert witnesses to testify about the meaning of an asserted patent claim under *Markman*. While Kaneka does not intend to rely upon expert witnesses to testify about the meaning of an asserted patent claim under *Markman,* Kaneka reserves the right to designate a rebuttal expert witness if any of defendants intend to present expert testimony about the meaning of a claim under *Markman*. The parties believe that such testimony is discoverable through expert reports and deposition before the *Markman* hearing, and such testimony is subject to cross examination during the *Markman* hearing.

The parties propose that experts be identified in accordance with the proposed Scheduling Order filed herewith.

##### (ii) The Format for the Claim Construction Hearing

The parties suggest that a claim construction hearing be scheduled for two days. The first day would consist of the parties respective technology tutorials to better educate the Court on the technology at issue. The second day would be the parties' oral presentation and advocacy of their respective claim interpretations. The parties propose that the claim construction hearing presentation be presented on each disputed claim term including rebuttal and reply before the next claim term is addressed.

(iii) **Educating the Court on the Technology at Issue**

The parties propose that they prepare technology tutorials in connection with the *Markman* hearing. The parties may present one respective expert witness to better educate the Court about the technology at issue in this case. While such an expert may answer any questions of the Court, testimony relating to the technology tutorial would not be subject to deposition or cross examination.

(iv) **Summary Judgment Motions Following Claim Construction**

If any party believes the Court's ruling on claim construction is dispositive, that party may file a motion for summary judgment. Extensions of time to discover or verify the alleged accused process may be necessary depending on the timing of the Court's claim construction determination.

Dated:   May 3, 2013                    Respectfully Submitted,

/s/ *Victor L. George* (with permission)

Victor L. George
Law Offices of Victor L. George

20355 Hawthorne Blvd., First Floor
Torrance, CA 90503
Tel: (310) 698-0990
Fax: (310) 698-0995

/s/ *Keith D. Nowak* (with permission)

Keith D. Nowak, Esq.
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel: (212) 732-3200
Fax: (212) 732-3232

|   |   |   |
|---|---|---|
| 1 |   | /s/ *Robert M. Bowick Jr.* (with permission) |
| 2 |   | Robert M. Bowick Jr. |
| 3 |   | RALEY & BOWICK, LLP |
| 4 |   | 1800 Augusta Drive, STE 300 |
| 5 |   | Houston, Texas 77057 |
|   |   | Tel: (713) 429-8050 |
| 6 |   | Fax: (713) 429-8045 |
| 7 |   | *Counsel for KANEKA CORPORATION* |
| 8 |   |   |
| 9 | Dated: May 3, 2013 | Mei & Mark LLP |
|   |   | /s/ *Lei Mei* (with permission) |
| 10 |   | Lei Mei |
| 11 |   |   |
| 12 |   | 818 18th Street NW, Suite 410 |
|   |   | Washington, DC 20006 |
| 13 |   | 202-256-1008 |
|   |   | Fax: 202-658-7441 |
| 14 |   |   |
| 15 |   |   |
|   |   | *Counsel for Xiamen Kingdomway Group* |
| 16 |   | *Company and Pacific Rainbow* |
| 17 |   | *International Inc.* |
| 18 | Dated: May 3, 2013 | K&L Gates LLP |
|   |   | /s/ *Matthew B. O'Hanlon* |
| 19 |   |   |
| 20 |   | Timothy P. Walker |
| 21 |   | Four Embarcadero Center, Suite 1200 |
|   |   | San Francisco, CA 94111 |
| 22 |   | 415-882-8200 |
| 23 |   | Fax: 415-882-8202 |
| 24 |   | Matthew B. O'Hanlon |
|   |   | 10100 Santa Monica Boulevard |
| 25 |   | Seventh Floor |
|   |   | Los Angeles, CA  90067 |
| 26 |   | 310-552-5000 |
|   |   | Fax:  310-552-5001 |
| 27 |   |   |
| 28 |   | *Counsel for Shenzhou Biology Technology Co. Ltd.* |

| | | |
|---|---|---|
| 1 | Dated: May 3, 2013 | Fish & Richardson P.C. |
| 2 | | /s/ *John B. Pegram* (with permission) |
| 3 | | John B. Pegram |
| | | 601 Lexington Avenue, 52nd. Floor |
| 4 | | New York, NY 10022 |
| 5 | | 212-258-2291 |
| | | Fax: 212- 258-2291 |
| 6 | | |
| 7 | | *Counsel for Mitsubishi Gas Chemical Company, Inc.* |
| 8 | | |
| 9 | Dated:  May 3, 2013 | Keane & Beane, P.C. |
| | | /s/ *Edward F. Beane* (with permission) |
| 10 | | Edward F. Beane |
| | | 445 Hamilton Avenue |
| 11 | | White Plains, New York 10601 |
| | | Telephone: (914) 946-4777 |
| 12 | | Facsimile: (914) 946-6868 |
| 13 | | *Counsel for Maypro Industries, Inc.* |