EXHIBIT C

PUBLIC VERSION

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

In the Matter of

CERTAIN COENZYME Q10 PRODUCTS AND
METHODS OF MAKING SAME

Inv. No.  337-TA-790

## COMMISSION OPINION

On September 27, 2012, the presiding administrative law judge ("ALJ") (Judge Rogers) issued a final initial determination ("final ID" or "ID") finding no violation of section 337 in the above-identified investigation with respect to the only asserted patent, U.S. Patent No. 7,910,340 ("the '340 patent").  The ALJ also issued a recommended determination ("RD") on remedy and bonding.

Having considered the ID, the submissions of the parties, and the relevant portions of the record, the Commission determined the following: (1) to review and affirm (a) the finding that MGC does not satisfy the 70 mole % limitation, and (b) the claim construction of "inert gas atmosphere" with respect to the asserted claims of the '340 patent; (2) to review and vacate the finding that the asserted claims of the '340 patent are not invalid under the new matter prohibition of 35 U.S.C. § 132; and (3) not to review the remainder of the final initial determination of the ALJ, including the ALJ's finding that certain asserted claims of '340 patent are not invalid under 35 U.S.C. § 112.  This opinion addresses those findings which the Commission has determined to review.[1]



---

[1] The final initial determination of the ALJ becomes the determination of the Commission for those findings which the Commission has determined not to review.  5 U.S.C. § 557; 19 C.F.R. § 210.42.

PUBLIC VERSION

## I. BACKGROUND

*A. Procedural History*

The Commission instituted this investigation on July 19, 2011, based on a complaint filed on June 17, 2011, by Kaneka Corp. of Osaka, Japan ("Kaneka"), and supplemented on June 24 and 27, 2011. *76 Fed. Reg.* 42729 (July 19, 2011). The complaint alleged violations of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, in the sale for importation, importation, or sale after importation of certain coenzyme Q10 products by reason of infringement of claims 1-45 of U.S. Patent No. 7,910,340. The Commission's notice of investigation named as respondents Zhejiang Medicine Co., Ltd. of Zhejiang, China; ZMC-USA, LLC of The Woodlands, Texas ("ZMC"); Xiamen Kingdomway Group Co. of Xiamen, China ("XKGC"); Pacific Rainbow International Inc. of City of Industry, California ("PRI"); Mitsubishi Gas Chemical Co., Inc. of Tokyo, Japan ("MGC"); Maypro Industries, Inc. of Purchase, New York ("Maypro Inc."); and Shenzhou Biology & Technology Co., Ltd. of Beijing, China ("Shenzhou").

On January 12, 2012, the Commission issued notice of its determination not to review an ID granting a motion to amend the complaint and notice of investigation to add a new respondent, Mitsubishi Gas Chemical America, Inc. of New York, New York and to replace respondent Maypro Inc. with Maypro Industries, LLC of Purchase, New York.

On June 29, 2012, the Commission issued notice of its determination not to review an ID (Order No. 42) that ZMC does not infringe claims 2, 5-8, 12, 16-19, 23, 26-28, 32, 34, 38-40, or 45.

On July 9, 2012, the ALJ ordered, pursuant to a stipulation from the parties, that no evidence be presented with respect to Maypro. Tr. at 10:21-12:21.

2

PUBLIC VERSION

An evidentiary hearing was held from July 9-13, 2012.

On September 27, 2012, the presiding administrative law judge ("ALJ") (Judge Rogers) issued a final initial determination ("final ID" or "ID") finding no violation of section 337. The ALJ also issued a recommended determination ("RD") on remedy and bonding.

Specifically, the ALJ found that the imported products were not shown to be manufactured by processes covered by the asserted claims of the '340 patent. In this connection, the ALJ examined the evidence relating to the manufacturing processes of the four groups of respondents. The ALJ found that the accused Shenzhou products do not infringe claims 1, 3-4, 6, 8-11, 13-15, 17, 19-22, 24-25, 27, 29-33, 35-37, 39, or 41-45. The ALJ found that the accused XKGC and PRI products do not infringe claims 1, 4-6, 9, 11, 15-17, 20, 22, 25, 27, 29, 30, 33, 37-39, 41-43, or 45. The ALJ found that the accused ZMC products do not infringe claims 1, 3, 4, 9-11, 13-15, 20-22, 24, 25, 29-31, 33, 35-37, or 41-44. The ALJ found that the accused MGC products do not infringe claims 1, 2, 4, 9-12, 14-15, 20-23, 25, 27, 29-31, 33-34, 36-37, 41-43, or 45.[2]

The ALJ found that Kaneka satisfied the economic prong of the domestic industry requirement but failed to satisfy the technical prong of the domestic industry requirement.

The ALJ found that the asserted claims were not shown to be invalid, as follows. The ALJ found that claims 1-4, 8-15, 20-25, 29-37, and 41-44 were not shown to be invalid by reason of an on-sale bar under 35 U.S.C. § 102(b). The ALJ found that claims 1-3, 6-14, and 17-21 of the '340 patent were not shown to be anticipated under 35 U.S.C. § 102(a). The ALJ found that claims 1-4, 8-15, 20-25, 29-37, and 41-44 were not shown to be invalid by reason of obviousness under 35 U.S.C. § 103. The ALJ found that claims 1, 11, 22, and 33 were not shown to be

---

[2] The ALJ also found that the accused Maypro products do not infringe any of the claims, pursuant to a stipulation by the parties.

PUBLIC VERSION

invalid as unpatentable under 35 U.S.C. § 101.  The ALJ found that claims 22-45 were not shown to be invalid for lack of an adequate written description under 35 U.S.C. § 112 ¶1 or new matter prohibition under 35 U.S.C. § 132.  The ALJ found that claims 1-45 were not shown to be invalid by reason of derivation under 35 U.S.C. § 102(f).

On October 10, 2012, Kaneka filed a petition for review of the final ID.  The Respondents and the Commission investigative attorney ("IA") filed contingent petitions for review.  On October 18, 2012, each party filed a response (with Kaneka filing separate responses to the Respondents and the IA).

The Commission has determined as follows: (1) to review and affirm (a) the finding that Mitsubishi Gas Chemical Co., Inc. ("MGC") does not satisfy the 70 mole % limitation of the asserted claims the '340 patent, and (b) the claim construction of "inert gas atmosphere" in the asserted claims of the '340 patent; (2) to review and vacate the finding that the asserted claims of the '340 patent are not invalid under the new matter prohibition of 35 U.S.C. § 132, and (3) not to review the remainder of the final initial determination of the administrative law judge, including the ALJ's finding that the asserted claims of '340 patent are not invalid under 35 U.S.C. § 112.

*B. The Patent*

The '340 patent[3], entitled "Processes for Producing Coenzyme Q10," assigned to Kaneka Corporation, was issued on March 22, 2011, based on application number 11/981,181[4] filed on July 17, 2008, by Kazuyoshi Yajima, Akihisa Kanda, Shiro Kitamura, and Yasuyoshi Ueda. This application was filed as a divisional of application no. 10/500,249, filed as application no. PCT/JP02/13766, on December 27, 2002, claiming priority from Japanese application no. 2001-

---

[3] JX-1.
[4] JX-3.

4

PUBLIC VERSION

398545, filed on December 27, 2001. The '340 patent is directed to processes for producing oxidized coenzyme Q10 according to the following steps: (1) producing reduced coenzyme Q10 at a ratio of not less than 70 mole % by fermentation in microorganisms; (2) optionally disrupting the microorganism's cells; and (3) oxidizing the coenzyme Q10 before or after extraction from the cells. Col. 3, lines 47-67. The process thus results in reduced coenzyme Q10 which is then oxidized to the oxidized form of coenzyme Q10. Col. 17, lines 1-17. The patent claims a process conducted on an "industrial scale."

There are four different independent claims, claims 1, 11, 22, and 33. The four categories of claims are based on whether there is a cellular disruption step (or not) and based on whether the oxidation step precedes (or follows) the extraction step.

## C. Technology: Coenzyme Q10's Formation, Composition, and Uses

Coenzyme Q10 is a naturally occurring compound found in the membranes of animal cells, including human cells, and in yeast and in some bacteria. Tr. at 12 (Tutorial). Coenzyme Q10 is part of the electron transport chain used in aerobic fermentation, where it alternates between an oxidized form (known as ubiquinone) and a reduced form (known as ubiquinol) and back again, as it accepts electrons from NADH and donates the electrons to oxygen ($O_2$), forming water and creating the gradient necessary to store chemical energy as ATP. *See* Tr. at 13-15 (Tutorial).

The chemical structure of oxidized coenzyme Q10 is:



CoQ10 (ox.)

'340 patent, Formula II, col. 1, lines 29-40.

5

PUBLIC VERSION

The chemical structure of reduced coenzyme Q10 is:



CoQ10 (red.)

'340 patent, Formula I, col. 1, lines 16-28.

As relevant to this investigation, coenzyme Q10 is sold as a dietary supplement and as an ingredient in cosmetics and in oral care products.  Tr. at 17 (Tutorial).

## II. STANDARD OF REVIEW

A party may petition the Commission for review of an ID on one or more of the following bases:

> that a finding or conclusion of material fact is clearly erroneous; that a legal conclusion is erroneous, without governing precedent, rule or law, or constitutes an abuse of discretion; or that the determination is one affecting Commission policy.

19 C.F.R. § 210.43.  Commission review is granted "when at least one of the participating Commissioners votes for ordering review." *Id.* § 210.43(d)(3).  The Commission may review an ID on its own motion based on the same standard. *Id.* § 210.44.

Once the Commission has decided to review the decision of the ALJ, then according to statute, the agency has all of the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule.  5 U.S.C. § 557(b); *Certain Acid-Washed Garments and Accessories*, Inv. No. 337-TA-324, USITC Pub. 2576, Comm'n Op. at 3 (Nov. 1992).  Commission Rule 210.45(c) implements 5 U.S.C. § 557(b).   In other words, once the Commission decides to review the decision of the ALJ, the Commission may conduct a review of the findings of fact and conclusions of law presented by the record under a *de novo* standard.

6

PUBLIC VERSION

## III. DISCUSSION

### A. Whether MGC Satisfies the 70 Mole % Limitation (Independent Claims 1, 11, 22, and 33).

The ALJ found that Kaneka failed to prove by a preponderance of the evidence that MGC satisfies the "70 mole %" limitation. ID at 323. The ALJ explained that Kaneka relied upon a document produced by MGC, CX-106C, to assert that this limitation is met. *Id.* CX-106C discloses that MGC performed a test which showed ratios of [[          ]] reduced coenzyme Q10. *Id.* However, the ALJ found that Kaneka has not tied these tests to products imported by MGC into the United States rather than being for products produced for other markets. *Id.* at 323-24.

*Analysis*

Kaneka argues that there is no record that MGC manufactures oxidized coenzyme Q10 at any plant other than in Niigata, Japan, and that this must be the source of the oxidized coenzyme Q10 imported into the United States. Complainant Kaneka Corporation's Petition for Review Pursuant to 19 C.F.R. §210.43 ("Kaneka Pet.") at 38.

The Respondents argue that Kaneka failed to show that MGC's process infringes the 70 mole % limitation. The Respondents argue that Kaneka does not rely on its own testing of MGC's products, but rather relies on expert testimony about an MGC document, CX-106C. Respondents' Reply to Complainant Kaneka Corporations's Petition for Review Pursuant to 19 C.F.R. §210.43 ("Resp. Rep.") at 61. The Respondents argue that Kaneka's petition focuses on the lack of connection to imported products and fails to address the following: (1) that CX-106C does not demonstrate the mole % reduced coenzyme Q10 at the end of fermentation; (2) that CX-106C lacks important details about the sampling, handling, and analysis of samples; (3) that there

7

PUBLIC VERSION

is no evidence of the time delay between sampling and testing; and (4) there is no evidence concerning the analysis method used. *Id.* at 62-63.

   The IA argues that experts, such as XKGC's expert, Dr. Spormann, and the prior art teach that depriving samples of oxygen can cause an increase in the ratio of reduced coenzyme Q10 and that this shift can occur in 1-2 minutes. Response of the Office of Unfair Import Investigations to Petitions For Review of the Initial Determination on Violation of Section 337 ("IA Rep.") at 16 (citing RX-623C at p.56 and Qs. 217, 212-221; RX-646; RX-645; RX-25; RX-644).[5]

   The Commission affirms the ALJ's finding that Kaneka has not proven that MGC satisfies the 70 mole % limitation. First, the Commission affirms the ALJ's finding that Kaneka has not tied MGC's tests to products imported by MGC into the United States rather than products produced for other markets. ID at 323-24. Second, as an additional basis in support of the ALJ's finding, the Commission finds that Kaneka has not proven that MGC's products satisfy the "70 mole %" limitation for the same reasons as for the other respondents, *i.e.*, the oxygen-deprived environment in which the samples were stored may have been responsible for any increase in the reduced coenzyme Q10. *See* Tr. 191-194; *see also* ID at 228-29 (discussing storage of samples in the context of the testing of Respondent Shenzhou's process). The exhibit relied on, CX-106C, has a chart:

| Step | first analysis | second analysis |
|---|---|---|
| immediately after culturing CD | [[   ]] | [[   ]] |
| after  [                           ]] (before®) | [[   ]] | [[   ]] |
| before entering extraction step @([[          ]]) | [[   ]] | [[   ]] |

---

[5] The record evidence indicates that a person of ordinary skill in the art would either test the samples right away, or would freeze them (and would test them right away upon thawing, making sure not to leave them in an oxygen-deprived atmosphere). *See* RX-348 at Q.269 (Taylor).

8

PUBLIC VERSION

However, when the chart lists: "immediately after culturing," the word "immediately" appears to refer to the point in the fermentation process when the sample is taken, *i.e.*, before [[

]], rather than to the amount of time between the taking of the sample and the testing of the sample. On the contrary, CX-106C indicates that the samples were taken at the Niigata factory but were tested at the Niiagata Research Center, almost ensuring that 1-2 minutes elapsed between the time the samples were taken and the time the samples were tested. *Id.* The sitting samples may therefore have caused an artificial increase in reduced coenzyme Q10. See Tr. 191-94; *see also* ID at 228-29 (discussing Kaneka's testing of Shenzhou's samples). Thus, in relying on MGC's test results of the samples shown in CX-106C, Kaneka has not proven that MGC's testing is probative for the same reason as for Kaneka's testing with respect to other respondents' accused products.

*B. Construction of "Inert Gas Atmosphere"*

The ALJ construed "inert gas atmosphere" to mean "an atmosphere of inert gas (such as nitrogen, carbon dioxide, helium, argon, or hydrogen) that is free or substantially free of oxygen," for the reasons set forth in the ID at 34-37. The ALJ found, *inter alia*, that the specification clearly indicates that the "inert gas atmosphere" of the claims is a way to create a "deoxygenized atmosphere." ID at 35.

Kaneka argues that the construction of inert gas atmosphere was erroneous because it improperly incorporates the "free or substantially free of oxygen" limitation. Kaneka Pet. at 19. Kaneka reasons that "inert" refers to safety, not to prevention of oxidation. *Id.* at 19-21 (citing the '340 patent, col. 17, lines 20-25). Kaneka argues that the portion of the specification relied upon by the ALJ describes an entirely different invention. *Id.* at 21. Kaneka argues that the

9

PUBLIC VERSION

U.S. District Court for the Southern District of Texas has construed "inert gas atmosphere"

consistent with its proposed construction.  Kaneka Pet. at 19 n.3 and 22.[6]

The Respondents argue that the ALJ did not err in construing "inert gas atmosphere."

Resp. Rep. at 10.  The Respondents assert that "inert gas atmosphere" does not describe a

different invention because it appears only one time in the patent, that it is necessary to

extraction of reduced coenzyme Q10, and that the patentee added "inert gas atmosphere" as a

claim limitation in order to gain allowance of the claims.  Id. at 11-12 (citing MGC00122087-

108, MGC00122115-16).  The Respondents argue that no skilled artisan would ever use

hydrogen with oxygen present because it is explosive, and the inclusion of hydrogen gas bolsters

the ID's finding that the inert gas atmosphere is "free or substantially free of oxygen" regardless

of whether the purpose is to protect from oxidation or combustion.  Id. at 12.

The IA states that in her post-hearing brief she argued that inert gas is a gas which does

not cause oxidation of coenzyme Q10 but that the ID's construction of an inert gas as "free or

substantially free of oxygen" is not erroneous.  IA Rep. at 11.  The IA argues that the gases listed

in the specification are ones that do not oxidize Q10, whether or not they are combustible.  Id.

(citing Tr. at 274:12-23; 271:17-20).

The Commission has determined to review and affirm the ALJ's construction.  The

Commission thus adopts the claim construction and reasoning of the ALJ, set forth in the ID at

34-37.[7]

---

[6] Kaneka appears to refer to the Order in *Zhejiang Medicine Co. v. Kaneka*, No. H-11-1052 (S.D. Tex.) (August 23, 2012) (Gilmore, J.) (construing claims).

[7] Although they concur in the result, Commissioners Pinkert and Broadbent would rely on the plain meaning of the term "inert gas atmosphere," which requires that the atmosphere of inert gas be "free or substantially free of reactive gases."

PUBLIC VERSION

*C. Invalidity Under 35 U.S.C. § 132*

The Respondents argued that claims 22-45 are invalid for inadequate written description and new matter in violation of 35 U.S.C. § 112 and § 132.

The ALJ found that the use of "sealed tank" in the '340 patent does not violate either the written description requirement of 35 U.S.C. § 112 or the new matter prohibition of 35 U.S.C. § 132. ID at 190. The ALJ found that performing an extraction in a "sealed tank" when using solvents was obvious to a person having ordinary skill in the art at the time of the invention of the '340 patent, and would have been reasonably conveyed. *Id.* at 189-90. Further, the ALJ found that Example 7 of the specification, as originally filed, describes a process that requires disruption in a pressure homogenizer sealed with nitrogen gas. *Id.* at 189. The ALJ found that the disrupted solution was then subjected to extraction with no mention of removing the cells from the sealed homogenizer, and one embodiment discloses disruption and extraction at the same time. *Id.* (citing JX-2.044, lines 11-23; the '340 patent, col. 9, lines 17-21). Moreover, the ALJ cited expert testimony concerning the understanding of persons skilled in the art at the time of the invention regarding the use of inert gases and sealed tanks when handling organic solvents. *Id.* at 190.

The Commission has determined not to review the ALJ's finding that claims 22-45 are not invalid by reason of 35 U.S.C. § 112 but to review the ID with respect to § 132. Violations of the new matter prohibition of 35 U.S.C. § 132 may lead to invalidation under 35 U.S.C. § 112 ¶ 1, but 35 U.S.C. § 132 does not itself provide a basis for rejection or invalidation. *See, e.g., Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1348 (Fed. Cir. 2010)(*en banc*) ("But § 132 is an examiner's instruction, and unlike § 282 of the Patent Act, which makes the failure to comply with § 112 a defense to infringement, § 132 provides no statutory penalty for a

11

PUBLIC VERSION

breach."); *see also* MANUAL OF PATENT EXAMINATION AND PROCEDURE § 2163.06, *Relationship of Written Description Requirement to New Matter* (8[th] ed., Latest Revision August 2012) ("If new matter is added to the claims, the examiner should reject the claims under 35 U.S.C. §112, first paragraph – written description requirement"). Therefore, we vacate the ALJ's finding on review with respect to 35 U.S.C. § 132.

## IV.  CONCLUSION

For the foregoing reasons, the Commission has determined, on review (1) to affirm (a) the finding that MGC does not satisfy the 70 mole % limitation and (b) the claim construction of "inert gas atmosphere" with respect to the asserted claims of the '340 patent and (2) to vacate the finding that the asserted claims of the '340 patent are not invalid under the new matter prohibition of 35 U.S.C. § 132.

By order of the Commission.

Lisa R. Barton
Acting Secretary to the Commission

Issued:  January 11, 2013

12

Page 1 – Certificate of Service

CERTAIN COENZYME Q10 PRODUCTS AND METHODS OF   337-TA-790
MAKING SAME

CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **COMMISSION OPINION** has been served by hand upon the Commission Investigative Attorney, Anne Goalwin, Esq., and the following parties as indicated, on **January 14, 2013**

Lisa R. Barton, Acting Secretary
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

**On Behalf of Complainant Kaneka Corporation:**

Joseph Zito, Esq.                        ( ) Via Hand Delivery
DNL ZITO                                 (X) Via Overnight Mail
355 South Grand                          ( ) Via First Class Mail
Suite 2450                               ( ) Other: _____
Los Angeles, CA 90071

**On Behalf of Respondents Xiamen Kingdomway Group Company and Pacific Rainbow International Inc.:**

                                         ( ) Via Hand Delivery
James C. Otteson                         (X) Via Overnight Mail
AGILITY IP LAW, LLP                      ( ) Via First Class Mail
1900 University Circle, Suite 201        ( ) Other: _____
East Palo Alto, CA 94303

**On Behalf of Respondents Zhejiang Medicine Co., Ltd. and ZMC-USA, LLC:**

Gary M. Hnath                            ( ) Via Hand Delivery
MAYER BROWN LLP                          (X) Via Overnight Mail
1999 K Street, NW                        ( ) Via First Class Mail
Washington, DC 20006                     ( ) Other: _____

Page 2 – Certificate of Service

<u>On Behalf of Respondent Mitsubishi Gas Chemical</u>
<u>Company, Inc. and Mitsubishi Gas Chemical America:</u>

Joseph V. Colaianni, Jr.                            ( ) Via Hand Delivery
**FISH & RICHARDSON P.C.**                           (X) Via Overnight Mail
1425 K Street, N.W.                                 ( ) Via First Class Mail
11th Floor                                ( ) Other: _____
Washington, DC 20005

<u>On Behalf of Respondent Mavpro Industries, LLC :</u>

Edward F. Beane                                     ( ) Via Hand Delivery
**KEANE & BEANE P.C.**                               (X) Via Overnight Mail
445 Hamilton Avenue                                 ( ) Via First Class Mail
White Plains, NY 10601                              ( ) Other: _____

<u>On Behalf of Respondent Shenzhou Biology &</u>
<u>Technology Co., Ltd.:</u>

                                                    ( ) Via Hand Delivery
Eric C. Rusnak                                      (X) Via Overnight Mail
**K&L GATES LLP**                                    ( ) Via First Class Mail
1601 K Street, NW                                   ( ) Other: _____
Washington, DC 2000